816 A.2d 213

BRUNSWICK STREET ASSOCIATES, PLAINTIFF, v. ABE
GERARD AND YUTU REEVES, DEFENDANTS.

Superior Court of New Jersey
Law Division

October 31, 2002.

*Bruce Gudin* for Plaintiff (*Levy, Ehrlich & Petriello*, Attorneys).

*Abe Gerard* and *Yutu Reeves* pro se.

FAST, J.S.C.

 This opinion addresses the unreported issue of the period required between the service of a notice to cease and a notice to quit in order to evict a residential tenant for the breach of a lease.[1]

Plaintiff served the defendant with a notice to cease, dated July 25, 2002, notifying the tenants that the landlord claimed that the tenants were allowing unauthorized occupants to live in their apartment, contrary to paragraphs # 6 and # 16 of the lease. Paragraph # 4 of the notice to cease stated that:

"The foregoing acts complained of must be corrected within 5 days of the date of this Notice. If you fail to Cease the Acts Complained of, the Landlord will take steps to terminate (end) your lease, and you will be evicted."

Paragraph # 6 of the lease limited the authorized occupants to only the defendants and their two (minor) children; Paragraph # 16 of the lease prohibited the assignment or subletting of the apartment without the landlord's consent.[2]

Plaintiff served the tenants with a notice to quit, dated July 31, 2002, six days after the notice to cease. It terminated the lease and demanded possession as of August 31st, alleging that "You have failed to cease Violation of your lease, and State Law by allowing unauthorized occupants to live in your apartment on and after June 1, 2002."[3] It described the alleged unauthorized

---

[1] This issue differs from the sufficiency of a notice to quit, a frequent source of litigation.

[2] There was no evidence of an assignment or subletting; the defendants have continued to reside in the subject apartment.

[3] I am deciding this case without regard to the apparent clerical error of having referred to June 1st, a date even prior to the date of the Notice to Cease

occupants and repeated the reference to paragraphs # 6 and # 16 of the lease.

The complaint was filed on September 18th. It alleged violation of the lease, as specified in the notice to quit and pursuant to *N.J.S.A.* 2A:18–61.1e, to wit, that "The person has continued, after written notice to cease, to substantially violate or breach any of the covenants or agreements contained in the lease."

The essential testimony in favor of the landlord was by Ms. Patricia Clark, a tenant who also happens to be the manager of the property, and a resident there for 12 years. She identified or described the alleged unauthorized occupants, two males and one female (the mother of Ms. Reeves, one of the defendants). She testified as to the frequency with which she saw them at the property, their coming and going (including getting mail there, with a key), and their access to the apartment without any of the named defendants (the authorized occupants) being present. She also noted the presence of these allegedly unauthorized people in the interval between the service of the notice to cease and the notice to quit—only a six day period.[4]

Ms. Grana, the principal of the plaintiff-landlord, on cross-examination, admitted that she had proposed a lease in September 2000, to include a fifth person, Ms. Reeves' mother. However, that lease was never signed because it included other changes that were not acceptable to defendants. As Ms. Grana explained, she had approved of the mother's occupancy at that time because she "intended to be nice." She also testified that if the mother were added as an occupant, under the subject subsidy program, the rent would have to have been re-calculated, to show any income for the additional occupant.

---

inasmuch as the parties understood it to relate to an allegation of a current nature, and because literally it includes more recent times.

[4] Although the notice to cease stated that the "cure" had to have been within five days, the notice to quit was dated six days later.

The only testimony presented in behalf of the defendants was by Rodney Johnson. His testimony was that he is related to the defendants and that he did live there at one time, for a few weeks in May, but moved out in May. He testified that he does frequently visit the defendants, and receives mail there sometimes (as a matter of convenience), but lives elsewhere with a brother and aunt.

There was no testimony to dispute the occupancy by the other male described by Ms. Clark, who, according to her, was also seen there between the dates of service of the notices to cease and quit.

As noted above, the law permits an eviction if the landlord proves a violation of the lease, as specified in the notice to quit and in violation of N.J.S.A. 2A:18–61.1e, to wit, that "The person has continued, after written notice to cease, to substantially violate or breach any of the covenants or agreements contained in the lease."

Although I find that there was insufficient evidence of the occupancy by Rodney Johnson during the material period, I find that the tenants *have* substantially breached the lease by the unauthorized occupancy by the unexplained (but described) male, and that the occupancy by the mother was also a substantial breach of the lease.

I find that the occupancy by the mother was substantial because, although plaintiff had previously approved her occupancy as shown by a proposed lease, that lease never became effective. The result was that the parties are bound by the last signed lease; it permits only 4 occupants, and if the mother were added, the rent would have been adjusted accordingly.

Notwithstanding my having found that the lease has been substantially breached by the unauthorized occupancy of the "other male" and Ms. Reeves' mother, I am constrained to dismiss the complaint without prejudice because of the unreasonably short period between the notice to cease and the notice to quit.

Some period is required by the legislation to permit a tenant to "cure" the breach alleged in the notice to cease; it is a

*warning notice.* See *RWB Newton Assoc. v. Gunn,* 224 *N.J.Super.* 704, 709–710, 541 *A.*2d 280 (App.Div.1988) which made clear the need for a notice to cease in order to evict a tenant based on an alleged breach of lease. However, the Legislature did not prescribe any specific period for the interval between service of the notice to cease and the notice to quit. The issue that is presented, then, is not one of statutory interpretation as to ambiguous provisions, but rather one of legislative intent on the failure to provide the detail of a statutory requirement for the enforcement of a right. See *N.J. Democratic Party, Inc. et als. v. Samson, et als.,* 175 *N.J.* 172, 178, 814 *A.*2d 1025, 1028 (2002), citing *State, Township of Pennsauken v. Schad,* 160 *N.J.* 156, 733 *A.*2d 1159 (1999), which said that " '... where it [legislation] does not specifically address a specific situation [the Court] must interpret it [in a manner] consonant with the probable intent of the draftsman had he anticipated the matter at hand.' "

In considering the probable intent of the Legislature, to wit, to provide a reasonable period for the tenant to cure the breach of this lease, I note that the legislative plan, inter alia, was to permit evictions in some instances upon the service of a three day notice to quit, *N.J.S.A.* 2A:18–62a, in other instances upon the service of a one month notice to quit, *N.J.S.A.* 2A:18–62b, and yet in another instance upon the service of a three *year* notice to quit, *N.J.S.A.* 2A:18–62g.

The difference in the periods appears to depend upon the ground for eviction; the more exigent the circumstance,[5] the shorter the notice. The notice to cease that plaintiff served here required the unauthorized occupants to cure the breach, i.e., to find alternative housing within the incredibly short period of only

[5] The "exigence" of a circumstance appears to have been the result of a delicate balancing of the interests of both the landlord and tenant. Some of the grounds require the proof of "fault," such as theft or damage caused by a tenant, whereas some may be described as "no fault" grounds, such as a landlord moving into the property in certain circumstances. The grounds based on the "fault" of the tenant permit an eviction after a shorter period.

five days. That notice provided no reasonable time for the tenant to cure the problem, to comply with the notice to cease.

The Anti–Eviction Act became law because of the lack of reasonably affordable housing. That situation has not changed in the approximately 28 years since the Act became effective, and it is still difficult to find reasonably affordable housing.

The criteria that I find to control this case are that:

1) the cure of the breach would have required the unauthorized occupants to find other reasonable housing within such a short period (five days, as stated in the notice to cease),

2) the occupancy was not illegal or hazardous (unlike drug violations, having willfully or through gross negligence causing damage to the premises, or having threatened the landlord), and

3) the landlord has tolerated the breach, according to the testimony, for perhaps one year or more.

Simply stated; I find that a notice that requires occupants to move their residences within a five-day period does not comply with the spirit of the anti-eviction act and I will dismiss the complaint without prejudice.